

**U.S. Department of Justice**
Federal Bureau of Investigation

June 2, 2025

## DECLARATION OF MATTHEW T. JOHNSON, SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION

I, MATTHEW T. JOHNSON, do hereby declare and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), a position I have held since October 2004. As a Special Agent, I have received training at the FBI Academy located in Quantico, Virginia, including training on investigative methods and training specific to counterintelligence and espionage investigations. I am currently assigned to a squad at the FBI Washington Field Office, Counterintelligence Division, where I primarily investigate counterintelligence matters. As an FBI Special Agent, I have conducted or participated in witness and subject interviews, physical surveillance, service of subpoenas, the execution of search and arrest warrants, the seizure of evidence, including computer, electronic, and e-mail evidence, as well as requested and reviewed pertinent records. Based on my experience and training, I am familiar with the requirements for the handling of classified documents and information. I am also familiar with the methods used by individuals engaged in the unlawful use or disclosure of classified information.

2. I am currently investigating the activities of NATHAN V. LAATSCH ("LAATSCH"), whom I believe, without authorization, stole and attempted to transmit classified national defense information to a foreign government in violation of the Espionage Act, 18 U.S.C. § 794(a).

3. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

4. During the course of my investigation, I reviewed a non-disclosure agreement ("NDA") for access to Sensitive Compartmented Information ("SCI") that LAATSCH signed on August 5, 2019. Among other things, the NDA stated:

    a. "I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures."

    b. "I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it . . . ."

    c. "I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including provisions of Sections 793, 794, 798, and 952, Title 18 United States Code, and Section 783(b), Title 50, United States Code. Nothing in this agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation."

    d. "I have read this Agreement carefully, and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798 and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 13526, as amended, so that I may read them at this time, if I so choose."

5. LAATSCH also signed an NDA for access to classified NATO material on August 5, 2019, which contains substantially similar provisions to the SCI NDA described in paragraphs 4(a)-(d) above.

6. I have also reviewed the oath of office that LAATSCH took upon joining DIA. As part of that oath of office, LAATSCH agreed to "support and defend the Constitution" and to "bear true faith and allegiance to the same."

7. According to DIA records, on August 15, 2019, July 6, 2021, and August 13, 2024, LAATSCH completed DIA trainings on the unauthorized disclosures of information.

8. As part of my investigation, I learned that on or about May 19, 2025, LAATSCH applied to renew his U.S. passport.

9. On May 29, 2025, I observed LAATSCH proceed to a location provided by the FBI in an attempt to transmit additional classified information to Country 1. LAATSCH was instead arrested after electronically transmitting more than twenty documents—all of which included classification markings—to the FBI.

10. After his arrest on May 29, 2025, upon being advised of his right to counsel, LAATSCH spoke to the FBI. Among other things, LAATSCH said:

    a. In addition to reaching out to the foreign government referred to as "COUNTRY 1" in the criminal complaint, LAATSCH also reached out to an additional foreign government by filling out a form on the publicly available website for that country's intelligence service. LAATSCH provided the additional foreign government a similarly worded offer to provide classified information and included the same contact information he provided "COUNTRY 1."

    b. LAATSCH admitted that, during the course of his communications with the FBI, LAATSCH believed he was communicating with COUNTRY 1 and that, on both May 1 and May 29, 2025, he believed he was transmitting classified information to COUNTRY 1.

11. During a Court-authorized search of LAATSCH's residence on May 29, 2025, the FBI located handwritten documents containing classification portion-markings. Additionally, on two separate occasions in May 2025, the FBI retrieved trash bags the defendant disposed of outside his residence, which contained a significant amount of shredded material, including documents containing handwritten information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Matthew T. Johnson
Special Agent, Federal Bureau of Investigation